# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAPPHIRE CROSSING LLC,**<br><br>    Plaintiff,<br><br>v.<br><br>**ABBYY USA SOFTWARE HOUSE, INC.,**<br><br>    Defendant. | **ORDER RE: MOTIONS TO DISMISS**<br><br>Case No. 20-cv-03590-YGR<br><br>Dkt. Nos. 20 |
| **SAPPHIRE CROSSING LLC,**<br><br>    Plaintiff,<br><br>v.<br><br>**EVERNOTE CORPORATION,**<br><br>    Defendant. | Case No. 20-cv-03593-YGR<br><br>Dkt. No. 23 |

Plaintiff Sapphire Crossing LLC brings these two patent infringement actions against defendants Abbyy USA Software House, Inc. and Evernote Corporation, alleging infringement of U.S. Patent No. 6,891,633 (the "'633 Patent"). Now before the Court are defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that plaintiff fails to plead direct or divided infringement and fails to plead compliance with the marking statute, 35 U.S.C. § 287(a). The two motions, filed through common counsel, make substantively identical arguments.

1   Having considered the papers and pleadings in this action, the Court finds the motion appropriate for resolution without oral argument and the matter is deemed submitted. Fed. R. Civ. P. 78(b); Civ. L. R. 7-1(b). The Court **GRANTS IN PART** and **DENIES IN PART** defendants' motions.

**I.   BACKGROUND**

The '633 Patent, titled "Image Transfer System," issued to Xerox Corporation on May 10, 2005. (Dkt. No. 1-1 ('633 Patent) at 2.)[1] Xerox assigned all rights in the '633 Patent to Ruby Sands LLC on November 25, 2015. (Dkt. No. 1 ("Abbyy Compl.") ¶ 10.) Ruby Sands LLC assigned all rights in the '633 Patent to plaintiff on May 26, 2018. (*Id*. ¶ 11.) The patent apparently expired in July 2019.

The '633 Patent is directed to an image transfer system that uses a device coupled to a computer. ('633 Patent at 1:7-10.) The PTAB has previously found all claims, except claims 19 and 20, of the '633 Patent invalid. (Dkt. No. 1-3 ("IPR2016-00723 Institution Decision") at 54.) Accordingly, plaintiff now asserts the two remaining claims. Claim 19 is an independent method claim that requires "providing an image transfer device," reading an image on a first medium (e.g., a paper business card), uploading electronic data[2] from a computer connected to the image transfer device, and then merging the electronic data with the scanned image to provide a modified image on a second medium. ('633 Patent at claim 19; Abbyy Complaint ¶¶ 12, 13.) Claim 20, which depends on claim 19, requires the data to stay with the electronic device once the computer is disconnected. ('633 Patent at claim 20.)

Sapphire accuses certain software applications, namely the Evernote App and the Abbyy Business Card Reader. Both of these applications allegedly allow a user to take a picture of a business card using a smartphone, automatically upload data, such as the contact's name and

---

[1] All citations refer to case number 4:20-cv-3590, unless otherwise noted.

[2] The electronic data from a computer includes "at least a portion of an image transfer menu." ('633 Patent at claim 19.) Sapphire interprets this limitation, somewhat unusually, to refer to functions performed by the menu. (Abbyy Compl. ¶ 20.) For example, Sapphire claims that imposing a watermark on the scanned image satisfies the limitation, even though the PTAB construction for a "menu" requires a "list." (*Id*. ¶¶ 19-23.) The Court does not address claim construction at this stage, but notes this and other unintuitive interpretations as a potential hurdle.

phone number, from defendants' servers, and then merge the data with the image on a medium that can be sent over the internet. (*See* Dkt. No. 1-2 ("Abbyy Claim Chart"); Dkt. No. 1-2 in case no. 20-3593 ("Evernote Claim Chart").) Sapphire does not allege that either defendant provides the smartphone. (*See id.* (claiming that "the method" provides the device).) Sapphire claims that defendants directly infringe during internal testing of the applications, and also that defendants indirectly infringe by inducing their customers to infringe and providing software to do so. (Abby Compl. ¶¶ 37-57; Dkt. No. 1 in case no. 20-3593 ("Evernote Compl.") ¶¶ 37-57.)

## II.  LEGAL STANDARD

### A. Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

If a court dismisses a complaint, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

///

///

### III. DISCUSSION

Defendants, through substantively identical motions, seek to dismiss on the grounds that (1) neither defendant provides a device (they both provide software), (2) defendants do not direct or control users for purposes of divided infringement, and (3) plaintiff failed to allege compliance with the marking requirement under 35 U.S.C. § 287(a). Plaintiff argues, in response, that the complaint adequately alleges three modes of direct infringement: infringement through internal testing of devices; divided infringement though direction and control over users; and direct infringement where the "image transfer device" constitutes software or infringement under *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319 (Fed. Cir. 2010).

In their replies, defendants indicate that they do not challenge plaintiff's claims based on internal testing and that their motion is therefore only a partial motion to dismiss.[3] Accordingly, the Court **DENIES** defendants' motion to dismiss as to direct infringement based on internal testing allegations and addresses the remaining arguments by claim type.[4]

#### A. Direct Infringement

Plaintiff claims that it adequately alleges direct infringement because claim construction could find that defendants' software apps constitute the "image transfer device." Plaintiff also claims that direct infringement allegations are proper under *SiRF*. It is not clear how these arguments relate to each other, so the Court addresses each.

First, Plaintiff is correct that claim construction is not properly resolved on a motion to dismiss. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349-50 (Fed. Cir. 2018). However, that does not require the Court to accept implausible claims. *See Ottah v. Fiat Chrysler*, 884 F.3d

---

[3] While Sapphire may pursue its claims based on internal testing, damages for such infringement are limited and must be tied to the internal use. *See Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314-15 (Fed. Cir. 2020); *see also De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *5 n.7 (W.D. Tex. Feb. 11, 2020) (questioning whether such claims are "financially justifiable").

[4] The Court notes that defendants do not seek to dismiss the indirect infringement claims, despite claiming that they had no knowledge of the patent prior to its expiration. It is not clear how plaintiff intends to pursue indirect infringement claims where the only allegation of knowledge is that defendants knew of the patent from the filing of the complaints one year after it expired. (Abby Compl. ¶ 43; Evernote Compl. ¶ 49.) Should Sapphire amend the complaints, it should clarify its indirect infringement allegations.

4

1135, 1141-42 (Fed. Cir. 2018). In *Ottah*, the court affirmed the dismissal of a complaint that sought to equate a camera with a "book," finding that the "liberally construed" infringement allegations lacked plausibility. *Id*. at 1142. Here, another district court has already found that plaintiff's interpretation was implausible and questioned whether plaintiff complied with Rule 11 pre-suit investigation requirements. *See Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016). Moreover, even if the Court were to accept plaintiff's construction, that would not state a plausible *direct* infringement claim where the other steps are still performed by users.

Second, *SiRF* does not provide a claim here. In *SiRF*, the accused infringer operated a global positioning system (GPS) that sent data to user-controlled GPS devices from servers. 601 F.3d at 1324. The end user elected to receive updates, and SiRF then transmitted the files to its customers (equipment manufacturers), who forwarded the data to end-user devices. *Id*. at 1330. The court found that SiRF directly performed "communication" and "processing" steps and that neither the customers nor the end users were necessary for a divided infringement claim. *Id*. First, the customers' forwarding of data did not defeat direct infringement because the claims permitted indirect communication. *Id*. In other words, the forwarding step was equivalent to a "switched telephone network" that routes parties' communications and did not mean that defendant did not itself communicate. *Id*. Second, SiRF performed the step of "processing satellite signals received at the mobile GPS receiver" because its software automatically performed the processing after enablement on end user devices. *Id*. at 1331. Again, the claims permitted intermediate steps, such as enablement, and "only SiRF's actions are involved in 'processing.'" *Id.*

The claims here are entirely dissimilar to those in *SiRF*. Defendants do not operate a system where some steps are performed on servers and others on end-user devices. They provide software. Although plaintiff claims that the accused software downloads data from defendants' servers, the claims are drafted in a way that requires *all* steps to be performed on end-user devices. For example, claim 19 recites "automatically uploading electronic data . . . from a computer"—not "automatically *transmitting* electronic data . . . *by* a computer." ('633 Patent at claim 19.) Thus, the additional steps performed on defendants' servers are irrelevant because the claims only

5

require steps performed on end-user devices. For this reason, *SiRF* is not applicable and plaintiff fails to state a claim for direct infringement. *See Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1221-22 (Fed. Cir. 2014) (no direct infringement where all steps are performed on end user devices); *see also Int'l Bus. Machines Corp. v. Booking Holdings Inc.*, 775 F. App'x 674, 678 (Fed. Cir. 2019) (finding *SiRF* inapplicable where third party performs any step).

Accordingly, the Court finds that plaintiff fails to state a claim for direct infringement based on allegations of end-users performing the claimed methods on their smartphones.

### B. Divided Infringement

To state a claim for divided infringement, plaintiff must allege facts "sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc)). Direction and control may be satisfied by an agency relationship, contractual requirements, or "conditioned benefit," where the alleged infringer "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023.

Here, plaintiff claims that defendants control the users' performance of the method steps through software. This Court recently addressed the question of whether software satisfies the "conditioned benefit" theory, and decided that it does not. As the Court explained:

> Each Federal Circuit case under this standard involves some version of offline control and conditioned benefit over users. In *Akamai*, the defendant imposed contractual requirements for users to perform certain steps to use its service. 797 F.3d at 1024. In *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, doctors conditioned patient treatment on their taking of folic acid. 845 F.3d 1357, 1366 (Fed. Cir. 2017). In *Travel Sentry, Inc. v. Tropp*, the defendant had a "memorandum of understanding" with the TSA to perform certain steps. 877 F.3d 1370, 1383-84 (Fed. Cir. 2017). And in *Nalco*, the defendant apparently paid a test facility to perform the method. 883 F.3d at 1353. Each of these cases involved offline or "real world"

6

> control and conditioning—not control through a device.
>
> By contrast, the Court is aware of no case where software functionality alone satisfied the "conditioned benefit" test. Although the Federal Circuit warned against limiting the standard to legal obligations and technological prerequisites, it has repeatedly stated that "mere guidance or instruction is insufficient" to show conditioned benefit. *Eli Lilly*, 845 F.3d at 1367; *Travel Sentry*, 877 F.3d at 1379. Under governing precedent, software is exactly that: instructions. *See Ricoh Co., Ltd. v. Quanta Comp. Inc* 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[S]oftware is not itself a sequence of actions, but rather it is a set of instructions that directs hardware to perform a sequence of actions."); *Fantasy Sports Props., Inc. v. SportsLine.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002) ("Software is a set of instructions, known as code, that directs a computer to perform specified functions or operations."); *see also Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 447 (2007) (relying on *Fantasy Sports* to equate software with instructions).
>
> Moreover, the Patent Act provides different provisions for infringement through supply of a device for infringement. *See* 35 U.S.C. § 271. Section 271(c) states that "[w]hoever offers to sell or sells . . . a material or apparatus for use in practicing a patented process . . . shall be liable as a contributory infringer." Section 271(b) provides liability for "active inducement," which includes providing instructions for infringement. *See Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1336 (Fed. Cir. 2019). The Federal Circuit has consistently analyzed provision of infringing devices under these standards, not the direct infringement of section 271(a). *See, e.g.*, *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1352, 1360 (Fed. Cir. 2012); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326-32 (Fed. Cir. 2010); *Ricoh*, 550 F.3d at 1341; *see also Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015); *cf. Hilgraeve Corp. v. Symatec Corp.*, 265 F.3d 1336, 1342 n.2 (Fed. Cir. 2001) ("While the parties, and the district court's decision, speak of the accused devices as infringing, more properly the allegation is that the operation of the devices directly infringes the method claims at issue, or that that the sale of the devices induces customers to infringe the method claims.").
>
> Thus, "in the context of the facts presented," the Court concludes that Sentius fails to state a claim for direct infringement based on allegations of direction and control through the provision of infringing software to end-user devices.

*Sentius Int'l, LLC v. Apple Inc.*, No. 4:20-cv-00477-YGR, 2020 WL 6081775, at **4-5 (N.D. Cal. Oct. 15, 2020).

The Court adopts the same reasoning here and finds that plaintiff fails to state a claim for divided infringement based on allegations that defendants provide software that performs a claimed method to end-user devices.[5]

---

[5] Defendants claim that divided infringement requires knowledge of the patent because

7

**C.     Marking**

The Patent Act states that "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.' together with the number of the patent." 35 U.S.C. § 287(a). Such "marking" of patented products is required before the patent owner may recover damages, unless notice was provided another way, such as through the filing of the complaint. *See id.*

Defendants move to dismiss because plaintiff fails to plead compliance with the marking statute. This is not appropriate for three reasons. First, plaintiff asserts method claims, which neither require, nor are capable of, being marked. *See Crown Pack. Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009). "The law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method." *Id.* Defendants' argument that the statute applies because the '633 contains unasserted apparatus claims was directly addressed and rejected by *Crown Packaging. See id.* Second, even if marking was required, defendants have the initial burden to identify unmarked products. *See Arctic Cat Inc. v. Bomardier Rec. Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). That renders dismissal inappropriate unless plaintiff cannot plead even *pro forma* compliance. Third, plaintiff alleges willful infringement, which is enough to satisfy the minimal pleading standard for marking.[6] *See Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005).

Accordingly, the Court does not dismiss on this ground.

//

//

---

Federal Circuit cited *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) as "cf." support in *Akamai*. 797 F.3d at 1023. That is incorrect for both divided infringement and for *Grokster*. *See Lyda* 838 F.3d at 1339 (listing elements); *Grokster*, 545 U.S. at 930 n.9 (no knowledge requirement).

[6] That said, the Court again questions how plaintiff intends to proceed on willful infringement where the complaint alleges that defendants received notice of the patent only after it expired. (Abbyy Compl. ¶ 43.) Plaintiff is advised to clarify the allegations or risk dismissal.

8

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motions to dismiss as to direct and divided infringement based on user operation of defendants' software, but **DENIES** the motion as to defendants' internal testing of the software

Liberal pleading standards exist. Accordingly, by November 9, 2020, plaintiff shall file either an amended complaint consistent with Rule 11 obligations or a notice that it shall stand on the operative complaint as defined by this order. Defendants shall respond within fourteen (14) days of plaintiff's filing.

**IT IS SO ORDERED.**

Dated: October 28, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**